## Owens v. Mays.

(Decided April 26, 1927.)

### Appeal from Perry Circuit Court.

Master and Servant.—Where employee stacking timber at foot of a hill was injured by a timber rolled down hill without sufficient warning by other employees, who were cutting and splitting timbers, held that injured employee was fellow servant of employees whose negligence caused injury, and employer having given adequate instructions as to giving warning before starting timbers down hill, and as to avoiding injury, was not liable, notwithstanding he had directed laborer engaged in putting timbers over hill to start them more directly toward stack.

F. J. EVERSOLE, JESSE MORGAN and J. T. BOWLING for appellant.

D. G. BOLEYN and R. L. BALLOU for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

The appellee instituted his action in the Perry circuit court against the appellant seeking to recover damages growing out of an injury while he was working for appellant, and as the result of the trial he was awarded

judgment in the sum of $3,000. The record discloses that appellant had a contract with the Hardy Burlingham Mining Company to furnish certain props or posts to be used in its mines.

These mines were located on the land of appellant, and under the deed to the minerals the company was entitled to certain timbers to be used in its mining operation. Appellant was clearing some of his lands, and the posts which he was engaged in cutting were from the land which he was clearing, and under his arrangements with the company it was to accept and pay for the posts when cut by him. At the time of the accident complained of appellee was working for appellant, and at the same time James Spencer, William Mays, and Harve McIntosh were also working for him. The appellee was stacking the posts at the bottom of the hill while the others mentioned were cutting and splitting the posts and sliding them down the hill to him. The cutting and splitting took place at a point about 30 feet above the point where appellee was stacking. It had been the custom during the operation which had continued for a few days only to warn appellee when a post was started down the hill. On the 28th day of January, 1924, while he was engaged in his part of the work and the others were engaged in their part of the work, a post was put over the hill by one of the other employees without sufficient warning and it struck appellee on his right leg. His leg was broken, and he was carried to the home of appellant, where he remained over night and was then taken to the home of Harve McIntosh. He was confined to his room about five weeks, and he claims that he suffered greatly and that he has not recovered from the accident. The appellee describes the accident as follows:

"Court: About the work, what were you to do and what were they to do? A. They were to warn me to get out of the way when they went to put over a bunch of props, and I would step back and get out of the way, until this time when they started one on me I didn't know anything about, and some man hollered 'Look out.' I looked back and it hit my leg, done just right now, wasn't no time

"Q. What were the men above you doing? A. Splitting mining props.

"Q. And what were you doing? A. I was stacking them.

"Just what were you doing at the particular time that they hollered to you to look out? A. Stacking mine posts; had one and had just walked up to the stack and was laying it down, and I heard somebody holler, 'Look out!' I turned around; I just had looked around and it hit my leg.

"Q. Had it been customary for them to give warning before pitching the mine posts down for you to stack? A. Yes, sir.

"Q. Do you know who shouted that warning to you? A. How was that?

"Q. Do you know who shouted the warning to you at this time? A. No, I don't know; one of the men above me; I don't know who it was.

"Q. Was the defendant, Harve Owens, up there where they were splitting posts? A. Yes, sir; he was right there, right there present."

The appellee was stacking props at the particular time of the accident, but he had been working for appellant 8½ days before he was hurt, and a part of the time he had helped saw the timber and had assisted in the manufacture of the props. The timber was cut at different points on the farm and hauled to a particular place on top of the hill, where they were sawed into proper lengths and split into the required size. When this was done they would put them over the hill singly or in bunches. The ground was frozen on the day of the accident, which tended to make it easier to slide the props down the hill. Appellee was facing the stack and between it and the operation on top of the hill when the timber struck him. He admits that appellant had instructed him carefully in his duties when he was stacking the props, and his instructions were to get out of the way of the timbers when they were thrown over the hill, and it is also shown that appellant had instructed the other employees to always give warning when they threw the timbers over the hill. It is not claimed or contended that appellant put the timbers over the hill in person. At the particular time of the accident James Spencer was putting the timbers over the hill. Appellee was not engaged to work regularly for appellant, but he agreed to work for him on pretty days, and he was working for some one else on bad days. It is admitted by appellee that a warning was given when the timber that struck him was put over the hill, but he claims that it was too

late to enable him to get out of the way. The other witnesses substantially corroborate the statements of appellee. They were all engaged in assisting appellant in getting out the mining timbers. The only evidence that appellant had any specific thing to do with the particular timber which caused the injury is that in putting over the timbers Spencer had not been getting them close enough to the stack, and appellant told him to start them more towards the stack. This seemed to anger the man who was putting them over, and the next one that he started down the hill struck appellee. The timbers were not put over the hill in a continuous stream, but at intervals. When a number of props were ready the stacker was notified and the particular bunch was put over, and after that was done no more were put over until another bunch was ready.

The evidence for appellant is not materialy different from that offered by appellee. The appellant is an old man 72 years of age and the owner of 350 acres of land on which the mines were located. He had sold his minerals together with certain portions of the timber growing on his land to the mining company, and from time to time he cut some of the timbers for the company. Appellant described the accident as follows:

"I went up there in the evening, and Mays was stacking timber; Jim Spencer was hauling timber; the other two was splitting the timber. They split and stack down on the lower part and go up onto the top, where we had some men haul it ready to split. They understood a general rule I had to get out of the way and keep out of the way all the time. They all acknowledged that to me. They know I told them that, to not be in the way of each other and not skid posts down when one was stacking, and not to get in the way when there was a general skidding down. I just went up in the evening to see how the boys was getting along. I heard them holler, and turned and looked down there, and Mays was standing up about 1½ foot on the stack. Jim Spencer hollered, 'Look out, Ike!' and I hollered, 'Ike! Ike!' twice. It skidded that way, jumped up and hit him on the leg; it was a level kind of place. It was a pine post, lay on its split side."

He further stated that he did not see the timber start over the hill, but when he heard the warning he looked

and saw appellee standing on the edge of the stack about two feet above the ground apparently in a deep study, and that he did not move until the timber struck him. In describing the nature of the work appellant stated that he worked a portion of the time when it was winter in getting out these timbers. He had two young men who worked with him on his farm, and they usually assisted in getting out the timbers, and he sometimes employed others to assist him. The appellant relies for reversal on the fellow servant doctrine, and that is the most important question in the case. By appropriate plea it was alleged that appellant was not entitled to rely on this plea because he fell within the provisions of section 4880, Ky. Stats., in that he had three or more employees regularly engaged in the same occupation or business. We assume, however, that this contention has been abandoned in view of the fact that no mention is made of it in the brief. We find no ruling of the lower court on the question other than his refusal to give an instruction offered by appellee covering the point. The evidence does not disclose, in our opinion, that appellant had three or more employees regularly engaged in the same occupation or business. He appears to have worked in putting out these timbers from time to time when the weather was not suitable for farming. If appellant fell within the provisions of the aforesaid section he could not rely on his common-law defenses, but since the point is not relied on by appellee and since we are of the opinion that the evidence does not show satisfactorily that appellant had three or more employees regularly engaged in the same occupation, we will give no further attention to this point.

The appellant in support of his contention that appellee was a fellow servant of appellant and that his injury was caused through the negligence of the fellow servant cites and relies on the case of Martin v. Mason-Hoge Company, 91 S. W. 1146, 28 Ky. Law Rep. 1333. An examination of the facts in that case discloses that the injured employee was employed in carrying rock and placing it in a crib to make a blind drain. The top of this drain was 8 or 10 feet from the ground, and there was a plank used as a walkway on which to carry the rock from the ground to the top of the drain. The rock which the employee was carrying was from a pile at the foot of a steep hillside located 60 or 70 feet from the top of the hill. The rock was hauled in wagons to the top of the hill and pitched over and permitted to roll down the hillside to

the pile of rock at its base. The driver of the wagon in which the rock was hauled was another employee of the same company. This employee drove to the top of the hill with the load of rock, and after giving warning by shouting he pitched the rock out of the wagon. One of the rocks thus thrown from the wagon rolled down the hill and struck the employee, who was engaged in carrying the rock, on the leg. The court in that case reached the conclusion that the laborer who was unloading the wagon and throwing out the rock was a fellow servant of the one engaged at the foot of the hill in carrying the rock, and, based upon that conclusion, the court held that a peremptory instruction should have been given in favor of the company on the ground that the injury of the plaintiff was caused by the negligence of a fellow servant.

This case seems so well in point that it hardly appears necessary to pursue our investigation further. As we read the brief for appellee, it appears to be conceded that appellant himself must be connected personally with the negligence in order to sustain the recovery in favor of appellee. When we examine that point we find that appellant had been careful to instruct appellee how to protect himself from injury. He had given instructions to his other employees to always give warning before starting the timbers down the hill. The only basis for the contention that appellant himself was in any way responsible for the injury is that he directed the laborer, who at the time was putting the timbers over the hill, to start them more directly towards the stack. We see no semblance of negligence in this. He had already instructed the laborer to give warning, and it was proper that the timbers should be directed near the stack to avoid carrying them when they reached the bottom.

The lower court, judging from his instructions, realized that there was no liability on the part of the appellant to appellee unless appellant was a party to the negligence by some personal act or direction at the time of the injury. The first instruction allowed the jury to find for appellee only in the event that it believed from the evidence that appellant was present at the time of the injury and ordered or directed another employee to slide the mine timber in the direction of the appellee, and that under such direction the other employee did so without warning to the appellee. It is very true that if appellant had directed his employee to put the timber

over the hill without giving warning he would be responsible; but he gave no such directions. His only instruction at the time was that the timbers be started more directly towards the stack.

The motion for a peremptory instruction to find for appellant should have been sustained at the conclusion of all the evidence, and the failure to sustain the motion was error. The judgment is reversed and the cause remanded for proceedings consistent with this opinion.